2002 WY 156

Velma REILLY, Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 01–149.

Supreme Court of Wyoming.

Oct. 17, 2002.

Mary B. Guthrie, Cheyenne, Wyoming, Representing Appellant.

*: Chief Justice at time of oral argument.*

Hoke MacMillan, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and David L. Delicath, Assistant Attorney General, Cheyenne, Wyoming, Representing Appellee.

Before HILL, C.J., and GOLDEN, LEHMAN,* KITE, and VOIGT, JJ.

VOIGT, Justice.

[¶ 1] In December 2000, a jury found appellant, Velma Reilly, guilty of conspiracy to commit robbery in violation of Wyo. Stat. Ann. §§ 6–1–303(a) and 6–2–401(a) (LexisNexis 2001), kidnapping in violation of Wyo. Stat. Ann. § 6–2–201(d) (LexisNexis 2001), aggravated robbery in violation of Wyo. Stat. Ann. § 6–2–401(c) (LexisNexis 2001), and attempted second-degree murder in violation of Wyo. Stat. Ann. §§ 6–1–301(a) and 6–2–104 (LexisNexis 2001). The district court sentenced appellant to prison terms of three to six years for conspiracy to commit robbery, twenty to fifty years for kidnapping, and ten to fifteen years for aggravated robbery, to run concurrently, and thirty to fifty years for attempted second-degree murder, to run consecutively to the other three sentences. Appellant appeals her conspiracy to commit robbery conviction, arguing that the evidence was insufficient to establish a conspiracy and that the district court failed properly to instruct the jury regarding the elements of that offense. She appeals her attempted second-degree murder conviction, asserting that attempted second-degree murder is a "logical impossibility." Appellant does not appeal her aggravated robbery or kidnapping convictions. We affirm appellant's attempted second-degree murder conviction, but reverse and remand for a new trial on the conspiracy to commit robbery charge.

## ISSUES

[¶ 2] The appellant states the issues as follows:

[I.] Whether [appellant] was properly convicted of attempted second degree murder.

[II.] Whether failure to set out the elements of conspiracy to commit robbery in an instruction invalidates [appellant]'s conviction.

[III.] Whether sufficient evidence was introduced at trial to prove beyond a reasonable doubt all of the elements of the crime of conspiracy to commit robbery.

The State of Wyoming, as appellee, phrases the issues in substantially the same manner.

## FACTS

[¶ 3] Appellant and her victim were acquaintances who lived in the same trailer park, had limited social contact, and at one point were co-workers. On July 10, 2000, the victim told appellant she was going to a local grocery store to purchase groceries and a $272.00 money order to satisfy the income tax balance on some radio contest winnings. According to the victim, appellant called and stated "come and pick me up, and I'll go with you." At about 11:30 p.m. that evening, the victim took her vehicle to appellant's residence. Appellant asked if her "friend," a thirteen-year-old male, could accompany them, to which the victim replied in the affirmative. The victim testified that she had two separate envelopes in her purse, one containing $49.00 for groceries and the other $272.00 for the money order.

[¶ 4] Upon reaching the grocery store parking lot, appellant grabbed the victim by the neck, pulled her to the center of the vehicle, pinned her arms, and ordered the male juvenile to "[g]et in the front and drive...." Appellant pulled a gun, pointed it at the victim's head, and told the victim to cooperate "because I can shoot you." At some point on rural Horse Creek Road, appellant directed the male juvenile to pull over, and told the victim to give appellant the "money." The victim gave appellant the envelope containing $49.00, and appellant angrily stated "Well, is this it?" The victim replied that it was, and appellant pulled the victim from the vehicle and told her to "lay face down on the ground." Appellant shot at the victim several times, the victim recalling "one bullet just zing[ed] right past my head." A detective testified that appellant admitted to aiming the gun at the victim's head and

firing it four or five times. According to the victim, appellant then stated "Damn you, Randy [appellant's boyfriend at the time]. You put blanks in this, and ... I'll kill you, too." Appellant yelled at the male juvenile to "get a tire iron," with which appellant repeatedly beat the victim on the back of the head.

[¶ 5] Appellant and the male juvenile left in the victim's vehicle, leaving the victim alongside the road. A passerby eventually found the victim and transported her to the emergency room. The victim suffered multiple injuries consistent with blunt force trauma, including internal bleeding around her brain and ear, scalp, ear, face, hand and arm lacerations, bruises, and fractured fingers and hands. Appellant was ultimately charged with conspiracy to commit robbery, kidnapping, aggravated robbery, and attempted first-degree murder.

## DISCUSSION

### ATTEMPTED SECOND-DEGREE MURDER

[¶ 6] Appellant contends that the elements of an attempt and second-degree murder are mutually exclusive and/or logically impossible, because an attempt requires that one act with a specific intent, while second-degree murder only requires that one act with a general intent. In support of this argument, appellant cites to cases from other jurisdictions, among them an attempted second-degree murder case in which the North Carolina Supreme Court concluded that, it is "logically impossible" for "a person to specifically intend to commit a form of murder which does not have, as an element, specific intent to kill" and that "attempted murder" is therefore "logically possible only where specific intent to kill is a necessary element of the underlying offense." *State v. Coble*, 351 N.C. 448, 527 S.E.2d 45, 48 (2000). Appellant asks this Court to adopt a similar approach. Her argument presents an issue of law that we review *de novo*. *Worcester v. State*, 2001 WY 82, ¶ 13, 30 P.3d 47, 52 (Wyo.2001).

[¶ 7] Wyo. Stat. Ann. § 6–1–301 states, in pertinent part:

(a) A person is guilty of an attempt to commit a crime if:

(i) With the intent to commit the crime, he does any act which is a substantial step towards commission of the crime. A "substantial step" is conduct which is strongly corroborative of the firmness of the person's intention to complete the commission of the crime[.]

According to Wyo. Stat. Ann. § 6–2–104, "[w]hoever purposely and maliciously, but without premeditation, kills any human being is guilty of murder in the second degree...."

[¶ 8] Appellant's claimed "logical impossibility" arises from the "intent" elements of these respective statutes. In the past, crimes have commonly been categorized by whether they require a "specific intent" or a "general intent." For many years, Wyoming had several pattern jury instructions defining and explaining the two terms, and yet, the differences between the concepts were not always readily discernible.

Realizing that the distinction between a specific intent crime and a general intent crime is apparently troublesome, we can perhaps clarify it by stating it in a somewhat different way. When the statute sets out the offense with only a description of the particular unlawful act, without reference to intent to do a further act or achieve a future consequence, the trial judge asks the jury whether the defendant intended to do the outlawed act. Such intention is general intent. When the statutory definition of the crime refers to an intent to do some further act or attain some additional consequence, the offense is considered to be a specific intent crime and then that question must be asked of the jury. *Dorador v. State*, 573 P.2d 839, 843 (Wyo. 1978). Following that logic, an "attempt" is a "specific intent" crime in that the attempt statute requires that one act with the intent to commit the object crime. On the other hand, we have held that second-degree murder is a general intent crime, because it requires proof only that the act was done voluntarily or deliberately, not that there was a specific intent to kill. *Bouwkamp v. State*, 833 P.2d 486, 493 (Wyo.1992); *Ramos v. State*, 806 P.2d 822, 830 (Wyo.1991).

[¶ 9] We have acknowledged a trend in the law to dispense with the pattern jury instructions [1] defining and explaining intent due to their "vagueness and general failure to enlighten juries." *Compton v. State*, 931 P.2d 936, 941 (Wyo.1997). Instead, juries

---

1. W.Cr.P.J.I. 3.501 (1978) states:
   *3.501 CONCURRENCE OF ACT AND SPECIFIC INTENT*
   To constitute the crime charged there must be a union of two essential elements, an act forbidden by law and a specific intent.
   Specific intent means more than the general intent to commit the act. To prove a crime which involves specific intent, the prosecution must prove beyond a reasonable doubt:
   (1) That the defendant did the act charged; and
   (2) That he did it with the specific intent described in the crime charged. The specific intent must be proved beyond a reasonable doubt as any other fact in the case.
   W.Cr.P.J.I. 3.503 (1978) states:
   *3.503 CRIMES REQUIRING NO CRIMINAL INTENT*
   For the crime charged, the doing of the act is itself punishable as a crime. The intent [with] which the act was committed is immaterial to guilt.
   W.Cr.P.J.I. 3.504 (1978) states:
   *3.504 DETERMINING PRESENCE OF SPECIFIC INTENT*
   The crime charged in this case is a serious crime which requires proof of specific intent before the defendant can be convicted. Specific intent, as the term implies, means more than the general intent to commit the act. To establish specific intent the state must prove that the defendant knowingly did an act which the law forbids, [knowingly failed to do an act which the law requires,] specifically intending to violate the law. Such intent may be determined from all the facts and circumstances surrounding the case.
   An act or a failure to act is "knowingly" done, if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason.
   W.Cr.P.J.I. 3.505 (1978) states:
   *3.505 DETERMINING PRESENCE OF GENERAL INTENT*
   The intent with which an act was done is a condition of the mind, that is seldom if ever, capable of direct and positive proof. Because we have no power to directly observe the condition of a person's mind, the best we can do is infer it from the evidence introduced.
   The jury may consider the circumstances surrounding the act, the doing of the act itself, the manner in which it was done and the means used.

should be instructed as to the appropriate intent that is an element of the particular crime; "it is more important that the jury understand what exactly they [are required] to determine." *Id.* This is consonant with our recent holding that "the test of whether a jury has been properly instructed on the necessary elements of a crime is whether the instructions leave no doubt as to the circumstances under which the crime can be found to have been committed." *Mueller v. State,* 2001 WY 134, ¶ 9, 36 P.3d 1151, 1155 (Wyo. 2001). The point is that attempting formally to distinguish between specific intent and general intent, beyond the substantive elements of the crime, may not be the surest way to define the nature of the intent that must be proven.

[¶ 10] Our precedent reveals that Wyoming is not a jurisdiction that finds it "logically impossible" to attempt a general intent crime. In several opinions, we have affirmed attempted second-degree murder convictions. *See, e.g., Bilderback v. State,* 13 P.3d 249 (Wyo.2000); *Gabriel v. State,* 925 P.2d 234 (Wyo.1996); and *Dichard v. State,* 844 P.2d 484 (Wyo.1992). We have also previously recognized the crime of attempted voluntary manslaughter. *Warren v. State,* 809 P.2d 788 (Wyo.1991). Wyo. Stat. Ann. § 6–2–105(a) (LexisNexis 2001) provides, in pertinent part:

A person is guilty of manslaughter if he unlawfully kills any human being without malice, expressed or implied, either:

(i) Voluntarily, upon a sudden heat of passion[.]

In *Warren,* 809 P.2d at 790, Warren challenged the sufficiency of the evidence to convict him of attempted voluntary manslaughter, arguing that there was no evidence of an attempt to kill. After stating the substantive elements of attempted voluntary manslaughter, this Court proceeded to evaluate the sufficiency of the evidence as to those elements, primarily the evidence supporting Warren's "attempt" to kill his victim and the accompanying inference regarding Warren's intent. *Id.* We concluded that the reasonable inference from the evidence presented was that "Warren attempted to kill [his victim], and a jury could so find beyond a reasonable doubt." *Id.* In the context of appellant's claimed "logical impossibility," particularly the intent element of an attempt versus that of an underlying general intent crime, attempted second-degree murder is indistinguishable from attempted voluntary manslaughter. Indeed, voluntary manslaughter is a "lesser included offense of the crime of second degree murder," and is "a general intent crime that does not require a deliberate intent to kill." *State v. Keffer,* 860 P.2d 1118, 1138–39 (Wyo.1993).

[¶ 11] A similar result was obtained in *Compton,* 931 P.2d at 938, where a jury convicted Compton of attempted first-degree sexual assault. On appeal, he questioned the adequacy of the district court's jury instructions, specifically regarding the elements of attempted first-degree sexual assault and its requisite intent. *Id.* at 939. First-degree sexual assault is a general intent crime. *Id.* at 941. This Court found that the district court's jury instructions adequately stated the substantive elements of attempted first-degree sexual assault, and adequately instructed the jury regarding the specific intent element of an attempt. *Id.* at 940–41.

[¶ 12] Nothing about the instant case convinces us that we should now find it legally or logically impossible for a person to attempt a general intent crime. As we said in *Compton,* 931 P.2d at 940, 941 (*quoting People v. Frysig,* 628 P.2d 1004, 1007 n. 4, 1008 (Colo.1981)), the question presented to the jury in an attempt case essentially has two levels: (1) whether the person had " 'the intent to perform acts which, if completed, would constitute the underlying offense' "— in other words, did the person intend the conduct that constitutes the substantial step; and (2) whether the person had the intent necessary as an element of the underlying offense—" '[e]xcept for the intentional conduct constituting the substantial step, the requisite culpability is that provided for in the definition of the [underlying] offense.' " That analysis works just as well for attempted crimes that traditionally have been categorized as general intent crimes as it does for attempted crimes that traditionally have been categorized as specific intent crimes.

### Conspiracy to Commit Robbery

[¶ 13] Appellant argues that the district court failed properly to instruct the jury on the elements of conspiracy to commit robbery. In particular, appellant contends that while the district court's elements instruction did contain the elements of conspiracy, that instruction did not include the elements of robbery and the jury instructions, even when viewed as a whole, therefore did "not fully and clearly describe the circumstances under which [appellant] could have been convicted of conspiracy to commit robbery." The State argues that the district court did instruct the jury regarding the elements of aggravated robbery, robbery being a lesser-included offense of aggravated robbery, and that the district court's elements instruction, when viewed as a whole, therefore correctly listed "all the elements of every offense charged" and sufficiently covered the issues presented at trial. Because the jury reached a unanimous verdict on the aggravated robbery charge, the State asserts that the jury read and understood the elements of that offense, what appellant "stood accused of and what facts the State was advancing in support of those accusations," and ultimately the "commonsense relationship between the robbery and conspiracy to commit robbery charges against her." If anything, according to the State, this potentially placed a higher burden on the prosecution to prove the additional element required for aggravated robbery as the alleged conspiracy's objective.

#### (a) Standard of Review

[¶ 14] W.R.Cr.P. 30 (2000) provided, in part:

Before instructing the jury the court shall conduct a formal instruction conference out of the presence of the jury at which the court shall inform counsel of the proposed action upon their requests and shall afford them an opportunity to offer specific, legal objection to any instruction the court intends to give and to offer alternate instructions. No party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury is instructed, stating distinctly the matter to which the party objects and the grounds of the objection.

We have stated that

[t]he spirit and policy of our rules with reference to jury instructions is to apprise and inform the district court of the purpose of offered jury instructions and of objections to proposed jury instructions so that the court may have an opportunity to correct and amplify them before submission to the jury.

*Ortega v. State*, 966 P.2d 961, 966 (Wyo. 1998); *see also Alberts v. State*, 642 P.2d 447, 453 (Wyo.1982). Accordingly, the "failure to object to instructions at trial before the jury begins its deliberations operates to preclude appellate review of those instructions, which become the law of the case unless a plain or fundamental error can be shown to prevail." *Sanchez v. State*, 751 P.2d 1300, 1308 (Wyo. 1988); *see also Brown v. State*, 953 P.2d 1170, 1180 (Wyo.1998).

[¶ 15] Considering the spirit and policy of this rule, we apply the plain error standard because appellant's trial counsel objected only to the format of the district court's jury instruction on the elements of the crimes charged, rather than its substance (i.e., the particular elements, or lack thereof, contained in the instruction).[2] To establish plain error, an appellant must demonstrate

2. The district court used a single jury instruction (Instruction No. 3) to instruct the jury as to the elements of the crimes charged. At the formal jury instruction conference, appellant's trial counsel placed the following objection on the record regarding that elements instruction:

[APPELLANT'S TRIAL COUNSEL]: And then on number—again, I'd like to reiterate like I discussed yesterday, for Instruction No. 3, I believe it's a bit confusing to have separate counts on the same page as to Count[s] I and II, and also I would object on the second page—

THE COURT: Just a minute. Let me slow you down a little bit.

[APPELLANT'S TRIAL COUNSEL]: My objection is just to the format of Instruction No. 3, that they're all on the same page.

Appellant's trial counsel also requested that the elements instruction as to attempted first-degree murder include more factual particularity concerning what substantial steps the State alleged in the Information that appellant took toward the commission of that crime.

"that the record clearly shows an error that transgressed a clear and unequivocal rule of law which adversely affected a substantial right." *Compton*, 931 P.2d at 939.

### (b) Jury Instruction on Conspiracy to Commit Robbery

■ [¶ 16] A failure properly to instruct on an element of a crime can constitute plain error. *Miller v. State*, 904 P.2d 344, 349 (Wyo.1995). Jury instructions are "designed to inform the jury about the applicable law so that the jury may apply that law to its own findings with respect to the material facts." *Brown v. State*, 817 P.2d 429, 439 (Wyo.1991).

Given this purpose, the test whether the jury has been instructed on the necessary elements of the crime charged is whether the instruction "leaves no doubt as to under what circumstances the crime can be found to have been committed." *Graham v. United States*, 187 F.2d 87, 90 (D.C.Cir. 1950), *cert. denied*, 341 U.S. 920, 71 S.Ct. 741, 95 L.Ed. 1353 (1951); *United States v. Salliey*, 360 F.2d 699, 702 (4th Cir.1966). A failure to give *any* instruction on an essential element of a criminal offense is fundamental error, as is a confusing or misleading instruction, requiring reversal of the defendant's conviction[.] *Vigil [v. State]*, 859 P.2d [659] at 662 [ (Wyo.1993) ], *quoting Cole v. Young*, 817 F.2d 412, 423 (7th Cir.1987) (emphasis added); *Phillips v. State*, 760 P.2d 388, 390 (Wyo.1988); *Redland v. State*, 766 P.2d 1173, 1174 (Wyo.1989).

*Miller*, 904 P.2d at 348 (emphasis in original).

■ [¶ 17] The district court instructed the jury as follows regarding the elements of the crimes charged:

### INSTRUCTION NO. 3

The four counts each charge a separate crime, all alleged to have occurred in the course of events described by the evidence. Each of the counts must be separately considered by you. The state must prove beyond a reasonable doubt each of the essential elements of each of the counts. The essential elements are:

For *each* of the counts, the *first* three (3) elements are:

1. On or about the 10th day of July, 2000,

2. In Laramie County, Wyoming

3. The defendant, Velma Reilly,[3]

*The other elements of the four (4) counts are:*

AS TO COUNT I, Conspiracy to Commit a Crime:

4. Agreed with one or more persons

5. That they or one or more of them would commit the crime of Robbery and

6. One or more of them did an overt act to effect the objective of the agreement.

AS TO COUNT II, Kidnapping:

4. Unlawfully removed and confined [the victim]

5. With the intent to facilitate the commission of a robbery, and

6. [The victim] was not released substantially unharmed and in a safe place prior to trial.

AS TO COUNT III, Aggravated Robbery:

4. Did steal, take or drive away the property of [the victim] with the intent to deprive her of that property, and

5. In the course of committing this crime used or exhibited a deadly weapon.

AS TO COUNT IV, Attempt to Commit Murder in the First Degree:

4. Purposely; and

5. With premeditated malice;

6. Attempted to kill [the victim].

As to each of the counts, it is not necessary that the state prove every fact surrounding the allegation beyond a reasonable doubt, but that it so prove all of the essential elements as given above.

If you find from your consideration of all the evidence that each of these elements in

---

3. Although appellant objected at trial to the format of this instruction, that issue was not raised on appeal.

**1266**

each of these counts has been proved beyond a reasonable doubt, then you should find the defendant guilty as to that count.

If you find that any of these elements has not been proved beyond a reasonable doubt as to any count, then you should find the defendant not guilty as to that count.

(Emphasis in original.) [4]

[¶ 18] This instruction leaves considerable doubt " 'as to under what circumstances the crime [of conspiracy to commit robbery] can be found to have been committed.' " *Miller*, 904 P.2d at 348 (*quoting Graham v. United States*, 187 F.2d 87, 90 (D.C.Cir.1950), *cert. denied*, 341 U.S. 920, 71 S.Ct. 741, 95 L.Ed. 1353 (1951)). It is undisputed that the conspiracy to commit robbery portion of the instruction did instruct the jury as to the elements of conspiracy,[5] but did not instruct the jury as to the elements of robbery. Wyo. Stat. Ann. § 6–2–401(a) provides:

[a] person is guilty of robbery if in the course of committing a crime defined by W.S. 6–3–402 [6] he:

(i) Inflicts bodily injury upon another; or

(ii) Threatens another with or intentionally puts him in fear of immediate bodily injury.

It is clear and unequivocal that

[i]n a conspiracy prosecution, the jury must determine whether the commission of a particular crime was the objective of the conspiracy. Since the object crime in this conspiracy prosecution was [robbery], the court must give an instruction that defines the offense that is the subject of the conspiracy.

4. The district court gave additional jury instructions defining the terms used in this elements instruction, as well as the elements of attempted second-degree murder.

5. Wyo. Stat. Ann. § 6–1–303 provides, in pertinent part:
(a) A person is guilty of conspiracy to commit a crime if he agrees with one (1) or more persons that they or one (1) or more of them will commit a crime and one (1) or more of them does an overt act to effect the objective of the agreement.

*Miller*, 904 P.2d at 347. Indeed, the "accused in a criminal prosecution, can only be convicted upon proof beyond a reasonable doubt of each element of the crime charged." *Vigil v. State*, 859 P.2d 659, 662 (Wyo.1993).

[¶ 19] The State's reliance on the aggravated robbery portion of the instruction is not convincing. It is true that when we examine jury instructions, we must look at them in their entirety and read them together. *Ostrowski v. State*, 665 P.2d 471, 487 (Wyo.1983). An error in one jury instruction can be cured elsewhere in the jury instructions if "the correct information is conveyed to the jury in a clear and concise manner so that it is unlikely that an erroneous impression would remain in the minds of the jurors." *United States v. Pope*, 561 F.2d 663, 670 (6th Cir.1977)[.] *Vigil*, 859 P.2d at 663. However, the aggravated robbery instruction is deficient for the same reason as the conspiracy to commit robbery instruction—it does not completely set forth the essential elements of robbery. Wyo. Stat. Ann. § 6–2–401(c) provides that

[a]ggravated robbery is a felony punishable by imprisonment for not less than five (5) years nor more than twenty-five (25) years if in the course of committing the crime of ***robbery*** the person:

(i) Intentionally inflicts or attempts to inflict serious bodily injury; or

(ii) Uses or exhibits a deadly weapon or a simulated deadly weapon.

(Emphasis added.) The aggravated robbery instruction does include an element required by Wyo. Stat. Ann. § 6–2–401(c)(ii) for aggravated robbery, and one element of robbery (what constitutes "a crime defined by W.S. 6–3–402"), but does not instruct the jury as to the additional element(s) of rob-

(b) A person is not liable under this section if after conspiring he withdraws from the conspiracy and thwarts its success under circumstances manifesting voluntary and complete renunciation of his criminal intention.

6. Wyo. Stat. Ann. § 6–3–402 (LexisNexis 2001) provides, in pertinent part:

(a) A person who steals, takes and carries, leads or drives away property of another with intent to deprive the owner or lawful possessor is guilty of larceny.

bery found in Wyo. Stat. Ann. § 6–2–401(a)(i) and/or (ii).

[¶ 20] The record clearly reflects what occurred at trial without resort to speculation. The district court violated a clear and unequivocal rule of law by failing adequately to instruct the jury on the essential elements of conspiracy to commit robbery, which denied appellant the right to a fair trial and the right to be convicted based on a finding of proof beyond a reasonable doubt of each element of the crime charged. *See Vigil,* 859 P.2d at 662 and *Buckles v. State,* 830 P.2d 702, 707–10 (Wyo.1992).[7] Accordingly, we reverse appellant's conspiracy to commit robbery conviction and remand for a new trial on that charge. This resolution obviates the need to address the issue of sufficiency of the evidence.

---

7. The district court is not required to utilize Wyoming's Criminal Pattern Jury Instructions, although it is worth noting that doing so likely would have prevented the error in this case. W.Cr.P.J.I. 13.01 (1996) states:

The elements of the crime of Conspiracy to Commit _____, as charged in this case, are:
1. On or about the __ day of ____, [200_]
2. In _____ County, Wyoming
3. The Defendant, _____
4. Agreed with one or more persons
5. That they or one or more of them would commit the crime of _____, and
6. One or more of them did an overt act to effect the objective of the agreement.
*

*Use Note: Set forth the elements of the object crime in a separate instruction.*
*

(Emphasis added.) W.Cr.P.J.I. 24.01A states:
The elements of the crime of Robbery, as charged in this case, are:
1. On or about the __ day of ____, [200_]
2. In _____ County, Wyoming
3. The Defendant, _____
4. In the course of committing [the crime of] Larceny

[5. Inflicted bodily injury upon another person.]
OR
[5. Threatened another person with or intentionally put him in fear of immediate bodily injury.]
*

W.Cr.P.J.I. 24.01B states:
The elements of the crime of Aggravated Robbery, as charged in this case, are:
1. On or about the __ day of ____, [200_]
2. In _____ County, Wyoming
3. The Defendant, _____
4. In the course of committing *Robbery*
[5. Intentionally inflicted or attempted to inflict serious bodily injury upon {another person} {_____}.]
OR
[5. Used or exhibited a deadly weapon or a simulated deadly weapon.]
*

*Use Note: Use the applicable option in Element 5. Separate instructions should be given on: (1) elements of robbery see Instruction 24.01A ....*
*